```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
ROBERT MICHAEL SHENK, derivatively on  :
behalf of SIRIUS XM RADIO INC.,        :
                                       :
               Plaintiff,              :
                                       :
          -v-                          :    11 Civ. 2943 (JSR)
                                       :
MELVIN ALAN KARMAZIN, GARY PARSONS,    :
JOAN L. AMBLE, LEON D. BLACK, EDDY W.  :
HARTSENSTEIN, JAMES P. HOLDEN, JAMES   :
F. MOONEY, JACK SHAW, GREGORY B.       :
MAFFEI, JOHN C. MALONE, DAVID J.A.     :
FLOWERS, CARL E. VOGEL and VANESSA     :
WITTMAN,                               :
                                       :
               Defendants.             :
------------------------------------- x
JEFFREY GOE, derivatively on behalf    :
of SIRIUS XM RADIO INC.,               :
                                       :
               Plaintiff,              :
                                       :
          -v-                          :    11 Civ. 3506 (JSR)
                                       :
JOAN L. AMBLE, LEON D. BLACK, EDDY     :    MEMORANDUM ORDER
HARTENSTEIN, JAMES P. HOLDEN, MEL      :
KARMAZIN, JACK SHAW, GREGORY B.        :
MAFFEI, JOHN C. MALONE, DAVID J.A.     :
FLOWERS, VANESSA A. WITTMAN and CARL   :
E. VOGEL,                              :
                                       :
               Defendants.             :
------------------------------------- x
```



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/28/11

JED S. RAKOFF, U.S.D.J.

In these two derivative actions on behalf of Sirius XM Radio, Inc. ("Sirius XM"), plaintiffs separately allege that the defendants, all of whom are either officers or directors at Sirius XM, committed certain transgressions while persuading regulators and shareholders to

approve a merger between Sirius Satellite Radio, Inc. ("Sirius") and XM Satellite Radio Holdings, Inc. ("XM"), which the companies completed and closed on July 29, 2008.  Specifically, plaintiff Goe alleges breach of fiduciary duty, unjust enrichment, and waste of corporate assets.  Plaintiff Shenk alleges breach of fiduciary duty, unjust enrichment, and securities fraud in violation of § 10(b) of the Exchange Act and Rule 10b-5.  Additionally, Shenk, but not Goe, alleges that defendants breached their fiduciary duties and unjustly enriched themselves when they approved a refinancing transaction in 2009 in which defendant John C. Malone purchased a large share of Sirius XM.

On July 7, 2011, the defendants jointly moved to dismiss both plaintiffs' complaints in their entireties.  After full consideration of the parties' briefs and oral arguments, the Court, on August 30, 2011, dismissed the entirety of plaintiff Goe's complaint and dismissed Shenk claims against defendants Gregory Maffei, David Flowers, Carl Vogel, and Vanessa Whitman, and his claims for unjust enrichment except with respect to defendant John Malone, but otherwise denied defendants' motion to dismiss Shenk's complaint.  This Memorandum Order explains the reasons for the Court's rulings, directs the entry of final judgment dismissing the Goe complaint, and also corrects the oversight in the Court's "bottom-line" Order of August 30, 2011.  Specifically, the Court also meant to dismiss, and now hereby does dismiss, Shenk's claim against Malone for breach of fiduciary duty.

Defendants primarily challenge the two complaints under provisions of applicable Delaware law and federal rules of procedure that require shareholders with a corporate grievance to either demand action from the corporation's board of directors or show why such a demand would be futile. The demand requirement implements "the basic principle of corporate governance that the decisions of a corporation — including the decision to initiate litigation — should be made by the board of directors or the majority of shareholders." Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 530 (1984).

Turning first to Goe's complaint, the defendants argue that Goe failed to comply with Federal Rule of Civil Procedure 23.1(b), which requires a plaintiff to (1) allege that he was a shareholder "at the time of the transaction complained of" and (2) state with particularity "any effort by the plaintiff to obtain the desired action from the directors or comparable authority." Fed. R. Civ. P. 23.1(b)(1) & (3). Defendants further argue that Goe failed to meet the standing requirements of Delaware law,[1] pursuant to which a plaintiff must allow the board to "ascertain through the exercise of due diligence whether the demand . . . is coming from a shareholder," Richelson v. Yost, 738 F. Supp. 2d 589, 600 (E.D. Pa. 2010), and must also "identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief." Allison v. Gen. Motors Corp., 604 F. Supp. 1106,

---

[1] Sirius XM is incorporated under the laws of Delaware. Shenk Cmplt. ¶ 23.

1117 (D. Del. 1985). Rule 23.1(b) and Delaware law, taken together, require Goe to reasonably demonstrate his shareholder status and to state with particularity how he has identified the wrongdoers, wrongful acts, and harms on which he bases his demand for action.

To satisfy these requirements, Goe notes that he sent a letter on February 25, 2011 to defendant Hartenstein, requesting that the Board cause the company to commence a lawsuit against members of the Board and others. Goe Cmplt. ¶ 66 & exh. A. The letter identified the wrongdoers as "certain current and former executive officers and directors of the Company," including "Mel Karmazin," the wrongful conduct as related to an antitrust "class action lawsuit filed against the Company,"[2] and the harm as the amount of damages caused by breaches of fiduciary duties and the costs associated with the lawsuit. Id. exh. A. To demonstrate that he held stock, Goe attached to his letter documents that showed that he held shares on February 10, 2011 and that Infinity Trading Group purchased shares of Sirius in April of 2008. Id. The defendants argue that Goe's letter did not meet the aforementioned standards of Rule 23.1(b) and Delaware law.

The Court agrees for two reasons. First, reference to the antitrust class action, without more, does not sufficiently identify "the factual basis of the wrongful acts" over which Goe requested suit. Not every antitrust suit results from an actionable breach of fiduciary duty by a director or an officer. Even if Sirius had

---

[2] Specifically, Blessing v. Sirius XM Radio, Inc., 09 Civ. 10035 (HB).

4

already settled the antitrust suit, as it did later, such settlement would not necessarily indicate breaches of fiduciary duty, but might simply indicate a desire to avoid the costs of litigating. Thus, Goe's invocation of the pending suit required the defendants to guess at how Goe thought that their misconduct had provoked the suit. Delaware law and Rule 23.1(b) require more.

Second, although Goe's letter demonstrated that he personally owned stock at the time he wrote his demand letter, it failed to show that he owned stock at the time of the events of which he complained. Rather, it showed only that, at those earlier times, stock was held by "Infinity Trading Group." But according to Goe's own demand letter, Brian Goe, plaintiff's brother, was the "Sole Proprietor" of Infinity Trading Group. Goe Cmplt. exh. A. In contrast, Jeffrey Goe, the plaintiff here, was merely an "authorized trader." Id. Thus, Goe's demand letter demonstrated only that Brian Goe, as sole proprietor of Infinity Trading Group, owned Sirius stock in 2008, when the conduct of which Jeffrey Goe complained occurred. Thus, Goe failed to adequately demonstrate to the board that he was a shareholder at the time of the transaction complained of. Accordingly, the Court dismisses Goe's complaint for failure to make an adequate pre-suit demand.

Turning next to Shenk's complaint, Shenk did not make a demand but relied instead on the assertion that such a demand would have been futile. Delaware law allows a plaintiff bringing a derivative action to forgo demanding action by a corporation's board of directors only

when he either has good reason to doubt whether a majority of the board is disinterested and independent because they "appear on both sides of a transaction []or expect to derive any personal financial benefit from it in the sense of self-dealing," or can show that directors did not satisfy the requirements of the business judgment rule. Aronson v. Lewis, 473 A.2d 805, 812-14 (Del. 1984), overruled in part on other grounds by Brehm v. Eisner, 746 A.2d 244, 254 (Del. 2000). Under Rule 23.1, moreover, a plaintiff must make particularized showings to prove futility.[3]

Shenk's complaint alleges that, prior to their 2008 merger, Sirius and XM were the only two satellite radio broadcasters, and they competed vigorously with one another. Shenk Cmplt. ¶¶ 43-45. The competition between the two permitted only one price increase between 2002 and 2007. Id. ¶¶ 52-54. In 2007, the two broadcasters entered into a merger agreement. Id. ¶ 57. To obtain regulatory approval, Sirius had to demonstrate that the merger would not have an anti-competitive effect. Id. ¶ 59. Thus, defendants stated in a Joint Application to the FCC, dated March 20, 2007, that the merger would result in "lower prices" for satellite radio, that the merger would not "harm competition in any market," and that existing subscribers would "receive substantially similar service at the same price over

---

[3] The standard under Rule 23.1 is more exacting than that under Federal Rule of Civil Procedure 12(b)(6), In re Morgan Stanley Deriv. Litig., 542 F. Supp. 2d 317, 320 (S.D.N.Y. 2008), and thus the Court's conclusions about the sufficiency of plaintiff's claims under Rule 23.1 mean a fortiori that they suffice under Rule 12(b)(6).

6

their existing satellite radio." Id. ¶¶ 60-61. Sirius allegedly had a history of lying to the FCC, and before the FCC would approve the merger, it required Sirius to pay a $17.4 million penalty — the second largest in FCC history — because Sirius had for five years falsely assured the FCC that it was working to develop a radio that could receive signals from both Sirius and XM. Id. ¶ 64.

Shenk's complaint further alleges that, to persuade shareholders to support the merger, Sirius issued a "Merger Proxy Statement" claiming that the merger would "provide consumers with more choices and lower prices." Id. ¶¶ 68-69. But, according to the complaint, these representations were false and made without a good faith basis. Indeed, even though Sirius promised the FCC that it would not raise multi-receiver subscription prices, in January 2009 it raised such prices from $6.99 to $8.99 per receiver per month. Id. ¶¶ 79-81. Moreover, Sirius instituted a uniform $2.99 per month fee for internet access, which it had formerly offered for free through certain, lower quality connections. Id. ¶ 83. Sirius also imposed new charges on XM subscribers, such as a cancellation fee and a fee to transfer subscriptions. Id. ¶¶ 86-88. Finally, Sirius raised prices in the form of a "pass-through" royalty fee, a cost that both Sirius and XM had not passed onto customers before the merger. Id. ¶¶ 91-92. Allegedly, these actions directly contradicted Sirius' representations before the merger, on which shareholders had relied. Id. ¶¶ 99-103.

The merger was completed in 2008. Id. ¶¶ 70-72. As a result, Sirius acquired approximately $1.25 billion of XM's debt, which it

needed to refinance immediately. Defendant Karmazin, who was both CEO and a director of Sirius, claimed he was unaware of $600 million of that debt until the "eleventh hour." Id. ¶ 74. As a result, Sirius had to issue 300 million additional shares of company stock to the holders of XM's debt, which caused a drop in share price, costing shareholders over $1 billion. Id. ¶¶ 74-75.

In December 2009, a class of Sirius subscribers commenced an antitrust action against the company, arguing that the price increases outlined above violated the Sherman and Clayton Antitrust Acts. Id. ¶¶ 112-114. The case settled, and the terms of settlement include payments in the amount of $180 million, plus costs of $13 million in legal fees. Id. ¶ 115. If the settlement is not approved, Sirius will face large damages claims, which will be trebled under antitrust law. Id. ¶ 116.

Shenk's complaint alleges that defendants breached their fiduciary duties by authorizing the merger in the face of easily anticipated liabilities, by misrepresenting its basis and likely effects to shareholders, and by placing the company in desperate need of financing, thereby causing its stock price to drop. As noted, as a result of the merger, Sirius badly needed refinancing because it had over $3 billion in total debt. Id. ¶ 117. Charles Ergen of Dish Networks, who had previously offered to acquire Sirius at a premium over market price, now offered $500 million if Karmazin and other existing board members relinquished their positions. Id. ¶ 118. Instead of selling to Ergen, however, the board sold to defendant

8

Malone, who offered $530 million in financing, bearing an interest rate of 15%, in exchange for preferred shares convertible into 40% of Sirius' common stock, the right to appoint three people to Sirius' board, an option to appoint three additional directors, and a $17 million signing bonus. Id. ¶¶ 120-121. In the same transaction, the board extended Karmazin's employment contract and gave him benefits worth $119 million. Id. ¶ 123. Shareholders did not vote to approve this transaction because Sirius invoked an exception to the Nasdaq rules for cases in which shareholder approval would "seriously jeopardize" a company's "financial viability." Id. ¶ 124. This, the complaint alleges, was simply a sham designed to preserve Karmazin's position at the company's expense. Id.

According to Shenk's complaint, it follows from the above that any attempt to demand action from Sirius XM's board would be futile. The complaint maintains that defendants' decisions to allow Sirius to violate antitrust laws and make misrepresentations to shareholders and regulators indicate a pattern of misconduct. Id. ¶¶ 134-135. Moreover, it claims that the directors had a financial interest in the Malone transaction. Id. ¶ 136. Directors Karmazin, Amble, Black, Holden, Mooney, Shaw, and Hartenstein all retained their positions by approving the Malone transaction, allegedly at the company's expense. Id. ¶ 151. Moreover, Shenk alleges, the board cannot be trusted to approve suit because they are the principal wrongdoers and their misdeeds cannot be ratified. Id. ¶ 152. In addition, other shareholders have complained to the Sirius Board without success. Id.

¶ 158. In short, the complaint alleges, the defendants have long failed to investigate and prosecute the wrongdoing at Sirius, and they will not do so because it would ruin their reputations and finances. Id. ¶¶ 154-157.

Under Aronson, a plaintiff, in order to show that board members cannot disinterestedly consider a proposal to sue themselves, must allege that the board faces "a substantial likelihood," rather than a "mere threat," of liability. Rales v. Blasband, 634 A.2d 927, 936 (Del. 1993) (quoting Aronson, 473 A.2d at 815). Because Sirius XM's certificate of incorporation includes a provision exculpating directors from personal liability for breaches of their duty of care, the defendants' "substantial likelihood" of liability can arise only from allegations that directors breached their duties of good faith or engaged in "intentional misconduct or a knowing violation of law." Del. Code Ann. tit. 8, § 102(b)(7); see also In re Walt Disney Co. Deriv. Litig., 906 A.2d 27, 66 (Del. 2006). Against this standard, the Court turns to evaluation of each of Shenk's claims. Rales, 634 A.2d at 936.

To begin with, some of Shenk's claims are facially deficient, independent of issues of futility. Specifically, defendants Malone, Maffei, Flowers, Vogel, and Wittman all became directors at Sirius XM during or after March 2009. Shenk Cmplt. ¶¶ 33-37. The conduct of which Shenk complains, however, occurred no later than early March 2009, id. ¶ 121, and the latest event of which Shenk complains, the Malone transaction, occurred before any of the five defendants

10

mentioned above became directors at Sirius XM. Id. ¶ 120. Thus, Shenk's complaint applies only to conduct that preceded these defendants' tenures. These defendants cannot have breached fiduciary duties before they owed such duties. Accordingly, the Court dismisses the claims for breach of fiduciary duty against Malone, Maffei, Flowers, Vogel, and Wittman.[4]

The remaining claims are, except for certain of the claims for unjust enrichment (discussed below), adequately pleaded as to liability, and, as it happens, as to futility as well. With respect to Shenk's claims that the other defendants breached their fiduciary duties by failing to correct alleged misstatements about the merger, Shenk, as noted, can satisfy the requirement of demand futility by alleging that the defendant directors face a "substantial threat" of liability because they acted in bad faith. In re Walt Disney Co. Deriv. Litig., 906 A.2d 27, 66 (Del. 2006). Courts have found bad faith where, for example, "directors knew of the violations of law, took no steps in an effort to prevent or remedy the situation, and that failure to take any action for such an inordinate amount of time resulted in substantial corporate losses." In re Abbot Laboratories Deriv. Shareholders Litig., 325 F.3d 795, 809 (7th Cir. 2003); see also In re Pfizer Shareholder Deriv. Litig., 722 F. Supp. 2d 453, 460 (S.D.N.Y. 2010) (noting similar cases).

---

[4] As noted, the Court's Order of August 30, 2011 dismissed all these fiduciary breach claims against Maffei, Flowers, Vogel, and Wittman. The Order inadvertently omitted the dismissal of the fiduciary breach claim against Malone, but it is now so dismissed.

Here, the complaint alleges that the directors, at virtually the same moment when they settled with the FCC for false past statements, made new ones of similar ilk. Specifically, at the time Sirius applied to the FCC for approval of the merger with XM, the FCC was concluding an investigation, begun in 2006, into whether Sirius personnel had, beginning in 1997, "knowingly and repeatedly" misrepresented the company's intentions to the FCC. Shenk Cmplt. ¶¶ 64-67. The FCC found that Sirius had done so, and it imposed the second largest penalty in FCC history, $17.4 million, as a result. Id. ¶¶ 64-65. It cannot have escaped the defendants' notice that, at the exact same time as the FCC investigated Sirius for knowing and repeated misrepresentations, Sirius was once again making repeated statements to the FCC of Siruis' future intentions in connection with the largest corporate event in Sirius' short history. Thus, defendants had a good faith obligation to investigate whether, by repeatedly claiming that the merger would result in the "same price" or "lower prices," id. ¶ 61, the company was once again committing the exact infraction that the FCC alleged it had been committing since 1997.

According to the complaint, the defendants could have easily uncovered the falsity of Sirius' claims about post-merger prices. Specifically, Shenk alleges that the board members recognized that the combined debt of the merged entities would create an urgent need to raise revenues, leading to an increase in prices. Id. ¶ 62. Sirius XM's urgent need for refinancing after the merger *despite* price

12

increases confirms the impossibility of keeping the promises that Sirius made to the FCC in its Joint Merger Application. Id. ¶ 117. The complaint further states that defendant Karmazin, rather than disputing this analysis, merely stated that he was unaware of $600 million of XM's debt until late in the merger process, which would not excuse the uncorrected false statements. Id. ¶ 74. Given Sirius' history of false statements to the FCC, and the inherent unlikelihood that it could fulfill its new promises to the FCC and its shareholders, the complaint adequately alleges bad faith on the part of the members of the board who approved the merger. These allegations thus manifest a "substantial threat" of liability for the defendant directors, excusing demand as futile.

Turning next to Shenk's securities fraud claims under § 10(b) and Rule 10b-5, Shenk alleges securities fraud against five defendants, namely, Karmazin, Black, Holden, Mooney, and Shaw. Defendants argue that a majority of directors could have independently considered this claim, defeating demand futility. Nonetheless, the fact that a director is not a defendant on a given claim does not mean that she is sufficiently independent to evaluate that claim. Here, the securities fraud claims proceed from the same facts as the breach of fiduciary duty claims. The non-defendant directors, in approving such claims, would have had to advance the very allegations – e.g., the falsity of representations that the merger would result in "lower prices" – that they denied in a different context and that potentially subjected them to liability in that context. They could not possibly

13

have done so in an objective, disinterested, independent fashion. Accordingly, the Court rejects defendants' contention that a majority of the board could have independently assessed Shenk's securities fraud claims.

As to the adequacy of the claims as pleaded, Shenk must state with particularity that the five defendants made materially false claims in connection with the merger, and that they did so with scienter. See, e.g., South Cherry St., LLC v. Hennessee Group LLC, 573 F.3d 98, 108 (2d Cir. 2009). The parties primarily dispute scienter. To adequately allege scienter, a plaintiff must show that defendants, at the very least, acted with "reckless disregard for the truth." Id. at 109. Reckless disregard means conduct that "is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Id. (quoting In re Carter-Wallace, Inc. Sec. Litig., 220 F.3d 36, 39 (2d Cir. 2000)). Under the Private Securities Litigation Reform Act (PSLRA), an inference of scienter must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007).

A plaintiff sufficiently pleads reckless disregard when she alleges "facts demonstrating that defendants failed to review or check information that they had a duty to monitor." Novak v. Kasaks, 216 F.3d 300, 308-09 (2d Cir. 2000). Thus, a number of courts have found

14

that officers and directors recklessly disregarded the truth when their companies made, and they failed to correct, statements that contradicted reasonably available data and that concerned major transactions or touched upon the heart of their companies' businesses. See, e.g., Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989); In re Biopure Corp. Derivative Litigation, 424 F. Supp. 2d 305, 308 (D. Mass. 2006); In re Ramp Networks, Inc. Sec., 201 F. Supp. 2d 1051, 1076 (N.D. Cal. 2002).

Shenk's complaint clearly and repeatedly alleges that the five defendants, all of whom were officers and directors at either Sirius or XM, failed to correct misrepresentations, the falsity of which they could have easily ascertained. Specifically, the Merger Proxy Statement claimed that the combined company would "provide consumers with more choices and lower prices." Shenk Cmplt. ¶ 69. As noted above, taking the allegations of the complaint as true, the defendants could have easily uncovered the falsity of such claims in the Merger Proxy Statement. Moreover, these claims were the centerpiece of the companies' attempts to market the merger, the most important event in either corporation's history, to shareholders. Thus, because, as directors and officers of the companies, these defendants had a duty to monitor the information that would have disproved the allegedly false and incredibly important claims, Shenk has sufficiently alleged, at a minimum, that they consciously disregarded the truth.

Shenk's inference of scienter is also adequately pleaded. Given the huge debt that the merger would impose on the company, it is

15

hard to see how defendants could have had a good faith basis for telling shareholders that the merger would result in lower prices. Thus, the inference of scienter on the allegations here pleaded is "strong" under the PSLRA.

The defendants finally argue that the securities fraud claims fail to allege loss because Sirius XM's share price has subsequently increased. Because Shenk brings a derivative claim, however, loss necessarily means loss to the corporation, which need not take the form of a decrease in share price. See In re Fossil, Inc., 713 F. Supp. 2d 644, 655 (N.D. Tex. 2010). Here, as noted, the complaint alleges considerable loss in, for example, the company's exposure to antitrust liability. See, e.g., Shenk Cmplt. ¶ 200.

Turning now to Shenk's claim regarding the Malone refinancing transaction, Shenk can excuse demand as futile if he can credibly allege that defendants violated their duties of loyalty by approving the refinancing transaction solely or primarily "to perpetuate [their] own control." Kahn v. Roberts, 1994 WL 70118 at *6 (Del. Ch. 1994). Shenk has successfully made such an allegation. Specifically, Shenk has described and compared two alternative refinancing transactions available to the board in February 2009. One proposal, set forth by Charles Ergen, who had previously offered defendants a premium over the market price, offered defendants $500 million if Karmazin and existing board members relinquished their positions. Shenk Cmplt. ¶ 118. The other proposal imposed a high interest rate of 15%, returned $17 million to the lender as a "bonus," and heaped benefits

16

worth $119 million on Karmazin, the CEO under whose leadership Sirius XM had verged on bankruptcy. Id. ¶¶ 120-23. Given these allegations, one can reasonably conclude that the defendants chose the latter transaction despite its allegedly unfavorable terms because it allowed them to retain their positions.

The defendants argue, however, that the Shenk complaint acknowledges a proper purpose for the Malone transaction, viz., avoiding bankruptcy. Cf. In re Chrysler Corp. S'holders Litig., 1992 WL 181024 at *4 (Del. Ch. 1992) (refusing to excuse demand as futile where a transaction "could, at least as easily, serve a valid corporate purpose as an improper purpose"). Nonetheless, the fact that the Malone transaction averted bankruptcy does not mean that defendants did not have entrenchment as their primary motive, as the Ergen transaction would have equally averted bankruptcy.

Moreover, the fact that the defendants did not subject the Malone transaction to shareholder approval raises additional questions about their motivations. To avoid seeking shareholder approval, defendants invoked an exception to the Nasdaq rules for cases in which shareholder approval would "seriously jeopardize" a company's "financial viability." Id. ¶ 124. The complaint alleges, however, that Sirius XM received a "clean" audit opinion only five weeks before its financial situation supposedly became so precarious. Id. Thus, one can plausibly infer that defendants overstated the danger to Sirius XM's "financial viability" in order to avoid letting shareholders express a preference for the Ergen transaction, which

would have required them to relinquish their positions. Because the Shenk complaint adequately alleges that defendants approved the Malone transaction primarily to perpetuate their own control, Shenk's failure to demand that the board bring claims regarding that transaction is excused on the basis of futility.

The Court turns lastly to Shenk's claim for unjust enrichment. To state a claim for unjust enrichment, Shenk must allege: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." Cantor Fitzgerald, L.P. v. Cantor, 724 A.2d 571, 585 (Del. Ch. 1998). A board's decision on compensation is "entitled to great deference," Official Comm. of Unsecured Creditors of Integrated Health Servs. v. Elkins, 2004 WL 1949290 at *17 (Del. Ch. 2004), and Shenk has alleged no causal relationship between the violations of which he complains and the defendants' compensation from Sirius XM. In re Pfizer, 722 F. Supp. 2d at 466. Shenk has alleged, however, that Malone opportunistically used the other defendants' desires to retain their positions at Sirius XM in order to extract unreasonably favorable terms in the refinancing transaction. Shenk Cmplt. ¶¶ 120-22. This conduct allegedly enriched Malone, impoverished Sirius XM, and served no purpose other than perpetuating the control of Sirius XM's directors.[5] Thus, while the

---

[5] The defendants have not shown that Sirius XM has a different legal remedy against Malone, and, in any event, Delaware law allows courts to permit unjust enrichment claims to proceed as alternatives to legal claims. See Crosse v. BCBSD, Inc., 836 A.2d 492, 497 (Del. 2003)

18

Court dismisses the claims for unjust enrichment against the other defendants, it allows that against Malone to proceed.

Shenk need not have asked the board to bring a claim for unjust enrichment against Malone. As noted above, Shenk could not have expected the board to allege that Malone enriched himself without "justification" while it also maintained, in order to defend itself against Shenk's breach of fiduciary duty claims, that the Malone transaction served a valid purpose. See Rales, 634 A.2d at 936. Thus, Sirius XM's board of directors could not have independently approved Shenk's unjust enrichment claim against Malone, and demand is excused as futile.

To summarize, the Court dismisses the entirety of the Goe complaint and the Shenk complaint's claims for breach of fiduciary duty against Malone, Maffei, Flowers, Vogel, and Wittman and for unjust enrichment against every defendant except Malone. In all other respects, the Court denies defendants' motion to dismiss the Shenk complaint. The parties in Shenk v. Karmazin et al. should proceed in accordance with the Case Management Plan. The Clerk of the Court is hereby ordered to enter final judgment dismissing Goe v. Amble et al., 11 Civ. 3506 (JSR).

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       October 27, 2011

---

(noting that courts are permitted to hear a "valid contract action that has an unjust enrichment claims as an alternative theory for recovery").